```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
RISPA BAPTIST,

                    Plaintiff,        MEMORANDUM AND ORDER

     -against-                         Civil Action No.
                                       04-CV-2365 (DGT)
GLOBAL HOLDING AND INVESTMENT
COMPANY, L.L.C., and GLOBAL BOND
FINANCIAL SERVICES, L.L.C. ,

                    Defendants.
-----------------------------------X
```

TRAGER, J.:

Plaintiff Rispa Baptist ("Baptist" or "plaintiff") brings this action against defendants Global Holding and Investment Company, L.L.C. ("Global Holding") and Global Bond Financial Services, L.L.C. ("Global Bond") (collectively, "defendants"), alleging that a debt collection letter she received from the defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692(e).[1] Plaintiff now moves for summary judgment pursuant to Fed. R. Civ. P. 56, arguing, inter alia, that defendants threatened legal action that could not be taken nor was intended to be taken. For the reasons set forth below, plaintiff's motion for summary judgment is granted.

---

[1] Plaintiff originally brought her action on behalf of herself and all others similarly situated, but has since elected to not move for class certification, due to defendants' finances. May 31, 2006 Letter from Lawrence Katz, Docket Entry no. 40.

**Background**

**(1)**

The material facts are not in dispute. On or about March 26, 2004, Baptist received a letter from Daryl Epstein, legal counsel for Global Holding and Global Bond. The heading of the letter referenced a debt owed by Baptist for approximately $109. The debt relates to the financing of a vacuum cleaner which was purchased in February 1983.

The letter was printed on the letterhead of Daryl Epstein, Esq., and indicates he is general counsel for both defendants. The letter reads:

> Dear Rispa Baptist,
> <u>Gold Bond Financial Services, L.L.C. has transferred your file to the Legal Department</u> for the collection of your debts. Unless you dispute the validity of the debt or any portion thereof within thirty days, this debt will be assumed to be valid.
> If, within thirty days of receipt of this notice, you notify this office in writing that this debt or any portion thereof is disputed, verification of the debt will be provided. We will provide you with the name and address of the original creditor if different from the current creditor, if you request this information in writing within thirty days.
> If you do not contact this office and make arrangements for payment of this debt, <u>my office will proceed in accordance with the instructions of Gold Bond Financial Services, L.L.C. Legal action against you may be authorized</u>, which will increase the amount for which you will ultimately be responsible to pay.

>    *You can avoid this action by contacting this office immediately.*
>    Very truly yours,
>    Daryl Epstein, Esq.
>    Attorney

(Emphasis added).

On or about June 8, 2004, Baptist commenced the present action against defendants to recover statutory damages and declaratory and injunctive relief.

**Discussion**

The FDCPA, 15 U.S.C. § 1692e provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>    *(5) The threat to take any action that cannot legally be taken or that is not intended to be taken*.

(Emphasis added).

Baptist argues that defendants violated the above section by threatening action that could not legally be taken, as the debt is over twenty years old and therefore time-barred. Additionally, Baptist contends that defendants violated 15 U.S.C. § 1692e(5) because the letter threatened legal action that was not intended to be taken, given the small amount owed. Defendants argue that there is a genuine issue of material fact as to whether the language in the letter actually threatened legal action on a time-barred debt and whether defendants had any

3

intention to sue plaintiff. Defendants further argue that plaintiff lacked standing when she commenced this action, because she filed for bankruptcy after receiving the letter and shortly before filing suit.

**(1)**

**Applicable Legal Standards**

Summary judgment is appropriate only if there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). All factual inferences must be drawn in favor of the non-moving party. Ford v. McGinnis, 352 F.3d 582, 587 (2d Cir. 2003) (citing Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc., 182 F.3d 157, 160-61 (2d Cir. 1999)). Plaintiff, the moving party in this action, bears the burden of demonstrating an absence of any genuine issue of fact. Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

Congress enacted the FDCPA to curb abusive practices of debt collectors and to establish certain rights for consumers. Alibrandi v. Fin. Outsourcing Serv., Inc., 333 F.3d 82, 85 (2d Cir. 2003); Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2001). The FDCPA generally forbids collection agencies from harassing debtors or employing deceptive techniques to collect on debts. Kropelnicki, 290 F.3d at 127.

4

In determining whether certain debt collection practices are in violation of the FDCPA, the Second Circuit applies an objective standard of the least sophisticated consumer. Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2d Cir. 1993); Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993). Under this standard, communications must be analyzed as if read and understood by "one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer." Russell v. Equifax A.R.S., 74 F.3d 30, 34 (2d. Cir. 1996). The standard seeks to protect all consumers, while also recognizing that debt collectors should be shielded from unreasonable interpretations of their communications with debtors. Clomon, 988 F.2d at 1320.

The least sophisticated consumer standard may be applied as a matter of law and thus may be applied in reviewing motions for summary judgment. Id. at 1318-19 (affirming grant of summary judgment for debtor under § 1692e using the least sophisticated consumer standard); Spira v. I.C. System, Inc., No. 05-CV-4367, 2006 WL 2862493, at *4 (E.D.N.Y. Oct. 5, 2006) (noting that the Second Circuit applies the least sophisticated consumer standard as a matter of law and that it may thus be applied in deciding a motion for summary judgment).

**(2)**

**§ 1692e(5)**

**a.  Threat to take action**

To establish a violation of § 1692e(5), plaintiff must show that defendants (1) threatened to take an action (2) that could not legally be taken or that was not intended to be taken.  To determine whether a communication from a debt collector constitutes a threat, the reviewing court should look to the language used as a whole.  <u>Pipiles v. Credit Bureau of Lockport, Inc.</u>, 886 F.2d 22, 25-26 (2d Cir. 1989) (reversing judgment for defendant and finding a threat under § 1692e(5) where "the clear import of the language, taken as a whole, is that some type of legal action has already been or is about to be initiated and can be averted from running its course only by payment").  If the communication from a debt collection agency is merely informing the debtor that it is seeking repayment, § 1692e will not have been violated.  <u>See</u>, <u>Wade v. Regional Credit Assoc.</u>, 87 F.3d 1098, 1100 (9th Cir. 1996) (finding no threat in letter that stated "If not paid TODAY, it may STOP YOU FROM OBTAINING credit TOMORROW. PROTECT YOUR CREDIT REPUTATION. SEND PAYMENT TODAY"); <u>Kapeluschnik v. Leschack & Grodensky</u>, No. 96-CV-2399, 1999 US Dist. LEXIS 22883, at *20-23 (E.D.N.Y. Aug. 26, 1999) (finding no violation of § 1692e where first letter stated "please take this opportunity to resolve this matter . . . to clear your account

6

now").

A communication that only advises a debtor that the collection agency has several options with which to pursue the debt will generally not be found to constitute a threat. See, Spira v. Ashwood Fin. Inc., 358 F. Supp. 2d 150 (E.D.N.Y. 2005) (finding that the language "it is our intent to pursue collection of this debt through every means available" accurately reported that defendant had several enforcement options from which to choose). On the other hand, an explicit threat of litigation or an implication that legal action is inevitable, when such is not the case, will violate § 1692e(5). See, Wiener v. Bloomfield, 901 F. Supp. 771, 775-76 (S.D.N.Y. 1995) (granting summary judgment for plaintiff under § 1692e where debt collector sent copies of summons and complaint which were captioned for an improper venue to the consumer, implying papers had been or were about to be filed in court unless the debtor responded by the deadline); Sluys v. Hand, 831 F. Supp. 321 (S.D.N.Y. 1993) (denying motion to dismiss filed by defendant who had written: "I will expect to receive a check from you within the next seventy-two hours so that legal action does not have to be instituted against you.").

Courts tend to be more divided, however, when language from a debt collector suggests the possibility of legal action. The Second Circuit found the vague but forceful language "we will at

any time after 48 hours take action as necessary and appropriate to secure payment in full . . . pay this amount if action is to be stopped" to impermissibly threaten action. <u>Pipiles</u>, 886 F.2d at 25. Likewise, in another case the Second Circuit reversed a grant of summary judgment for the defendant, finding that a letter stating: "Your creditor . . . [has] instructed us to proceed with whatever legal means is necessary to enforce collection," and a follow-up letter stating: "Were our client to retain legal counsel . . . it could result in a judgment," presented an implied threat of litigation, notwithstanding the fact that later communications admitted no legal action was being taken against the debtor. <u>Bentley</u>, 6 F.3d at 61-62; <u>see also</u>, <u>Berger v. Suburban Credit Corp.</u>, No. 04-CV-4006, 2006 WL 2570915, at *7 (E.D.N.Y. Sept. 5, 2006) (finding that the language "if we do not receive the balance of payment by return mail, we shall take whatever steps necessary," could be interpreted by an unsophisticated consumer as a threat); <u>Tsenes v. Trans-Cont'l</u>, 892 F. Supp. 461, 465 (E.D.N.Y. 1995) (denying motion to dismiss, because the language used in the collection letter: "to withhold further action, return this statement with payment in full," was vague enough for consumer to construe it as a threat of legal action).

Conversely, other courts have found that an implied threat of litigation does not suffice as a threat under § 1692e(5) and,

instead, view it as one possibility among several options. See, Madonna v. Academy Collection Serv., No. 95-CV-00875, 1997 WL 530101, at *6-7 (D. Conn. Aug 12, 1997) (Cabranes, J., sitting by designation) (finding that the statement, "failure to comply may result in our informing our client that you have refused to cooperate, and they may pursue legal action," did not amount to a threat to pursue legal action); Knowles v. Credit Bureau of Rochester, No. 91-CV-14S, 1992 WL 131107, at *1 (W.D.N.Y. May 28, 1992) (finding that the statement, "failure to pay will leave our client no choice but to consider legal action," "threatens no action whatsoever"); Riveria v. MAB Collections, 682 F. Supp. 174, 178 (W.D.N.Y. 1988) (finding language, "you leave us no choice but to advise your creditor . . . that legal action may be necessary," unthreatening, because it only said it would "advise").

Where it is unclear whether the communications truly threaten legal action, however, the fact that an attorney – as opposed to a debt collection service – sent the letter "may create a sliding-scale which increases the sensitivity of the debtor to language in the letter threatening litigation." Abels v. JBC Legal Group, P.C., 428 F. Supp. 2d 1023, 1028 (N.D. Cal. 2005). See also, Jenkins v. Union Corp., 999 F. Supp. 1120, 1137 (N.D. Ill. 1998) (noting that a letter signed by an attorney may signal to an unsophisticated consumer that legal action is at

9

hand and that the source of the letter "can be determinative"). However, "courts have required more than the fact that a collection letter is from an attorney." Kapeluschnik, 1999 U.S. Dist. LEXIS 22883, at *19. In Kapeluschnik, which considered several different letters, a letter from a law firm stating that "if payment is not made, legal action may become necessary," was sufficient to constitute a threat under § 1692e(5). Id. at *23. See also, Gervais v. Riddle Assocs., 479 F. Supp. 2d 270, 275 (D. Conn. 2007) (holding that nebulous language on law firm letterhead would lead an unsophisticated consumer to fear imminent litigation); Rosa v. Gaynor, 784 F. Supp. 1, 4 (D. Conn. 1989) (holding letter from attorney that "we may be forced to proceed with a lawsuit," would cause an unsophisticated debtor to believe legal action is imminent).[2] Certainly, many cases involving consumer challenges to debt collection communications under § 1692e(5) appear to involve similar language and circumstances, yet come out opposite ways.

While it may be a fine line to draw, the communication here

---

[2] Even if the letter is from a lawyer and states that legal action is a possibility, however, there will not be a violation of § 1692e(5) if there are valid intentions behind the threat and the attorney has the ability to proceed with legal action. See, Mizrahi, 1999 WL 33127737, at *6 (E.D.N.Y. Nov. 5, 1999) (holding letter from attorney, on letterhead, merely informed consumer that "legal action may follow if you fail to respond" and was an accurate threat, not in violation of § 1692e(5), as the record reflected that the law firm was prepared to sue the debtor).

10

from Global Holding and Global Bond, viewed from the standpoint of the least sophisticated consumer, presents a threat to take legal action. The first portion of the letter notes that the file has already been transferred to the Legal Department for collection of the debts. The letter is from an attorney, on letterhead, implying that if any further steps were to be taken, it would be handled by the legal department of Global Holding and would likely involve legal action. Further, it suggests that the only way to avoid such legal action would be to voluntarily pay the debts. See, Canlas v. Eskanos & Adler, P.C., No. C 05-00375, 2005 WL 1630014, at *3 (N.D. Cal. July 6, 2005) (denying motion to dismiss where letter from attorney containing statement "further action can be avoided," coupled with identification as lawyer, would lead the least sophisticated consumer to believe that legal action was imminent). In sum, the source and wording of the letter here were enough for the least sophisticated consumer to believe legal action was likely.

**b.    Threat to take action that could not legally be taken**

Plaintiff argues that the defendant's threat of legal action was in violation of § 1692e(5) because the debt was time-barred and litigation was, therefore, unwinnable. Although a debt collector may seek to collect on a time-barred debt voluntarily, it may not threaten litigation. Freyermuth v. Credit Bureau

11

Servs., Inc., 248 F.3d 767, 771 (8th Cir. 2001) (finding no violation of § 1692e(5) if a debt collector acts to collect on time-barred debt without threatening litigation); see also Goins v. JBC & Assocs., P.C., 352 F. Supp. 2d 262, 272 (D. Conn. 2005) ("[A]s the statute of limitations would be a complete defense . . ., the threat to bring suit under such circumstances can at best be described as 'misleading' representation, in violation of § 1692e.").

As the focus of § 1692e(5) is to prohibit debt collection agencies from harassing debtors and intentionally making threats that cannot be carried out, it is certainly relevant whether the debt collector knew the debt was time-barred. See, Simmons v. Miller, 970 F. Supp. 661, 664-65 (S.D. Ind. 1997) (holding that although debt collector filed suit which may have been time-barred, the statute of limitations was unclear under state law and, therefore, debt collector did not knowingly file a time-barred suit). Indeed, "the threatening of a lawsuit which the debt collector knows or should know is unavailable or unwinnable by reason a legal bar such as the statute of limitations is the kind of abusive practice the FDCPA was intended to eliminate." Beattie v. D.M. Collections, Inc., 754 F. Supp. 383, 393 (D. Del. 1991).

Additionally, if an attorney were to knowingly file a lawsuit on time-barred claim, Rule 11 sanctions would be

12

appropriate.  See Goins, 352 F. Supp. 2d at 272.  To allow attorneys to proceed otherwise would have a court lend approval to actions threatening and undertaking lawsuits that simply could not prevail.  See, Kimber v. Federal Fin. Corp., 668 F. Supp. 1480, 1489 (M.D. Ala. 1987) ("[A] debt collector's filing of a lawsuit on a debt that appears to be time-barred, without the debt collector having first determined after a reasonable inquiry that the limitations period has been or should be tolled, is an unfair and unconscionable means of collecting the debt.").

Here, it is undeniable that under either New York State law or the Uniform Commercial Code, any legal action to collect on a debt from 1983 would be barred by the statute of limitations.  Certainly, given that the debt was over twenty years old, it is reasonable to assume that Global Holding, Global Bond and Mr. Epstein knew or should have known that the debt was time-barred and, therefore, that any legal action would be fruitless.  To allow a debt collector to threaten a consumer with legal action, even though the statute of limitations would provide the consumer with the ultimate defense, would be to encourage manipulation and misuse of the legal system.  In sum, because the letter from defendants threatened legal action which could not be taken, plaintiff's motion for summary judgment is granted.

**c.   Threat to take action that is not intended to be taken**

Plaintiff also argues that defendants' letter violated § 1692e(5), as it was a threat to take action that was not intended to be taken. Plaintiff relies on the fact that the debt was for a very small amount and would, therefore, not make litigation cost-effective, arguing further that discovery revealed that defendants had no intention of bringing a lawsuit.

To successfully prove a threat was in violation of § 1692e(5) based on lack of intent to follow through, the plaintiff carries the burden of showing that the possibility of a lawsuit could be ruled out. Pipiles, 886 F.2d at 25 (finding lack of intent where collector admitted it routinely took no legal actions to collect debts of $150 or less, and would only place phone calls in those instances); Laster v. Cole, No. 99-CV-2837, 2000 WL 306848, at *5-6 (E.D.N.Y. Mar. 20, 2000) (finding that plaintiff failed to prove defendant had no intention of recommending litigation within time frame stated in collection letter); Sluys, 831 F. Supp. at 327 (S.D.N.Y. 1993) (suggesting that lack of intent could be shown if creditor had a practice of not bringing suits against customers).

Although the amount that plaintiff owed was rather small – approximately $109 – the small debt alone does not conclusively mean defendants had no intention to bring a lawsuit. See, Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1176-77 (11th Cir. 1985)

14

(reversing grant of summary judgment for collection agency where fact issues remained as to whether it intended to pursue threatened action).

While plaintiff claims that the interrogatories answered by defendants illustrate a lack of intent to pursue plaintiff's debt of $109 with legal action, the interrogatory responses do not conclusively answer the questions.[3]  Nor is it obvious that, even if it is not defendants' regular policy to bring such suits, they would not have done so in the present case.  Accordingly, plaintiff has not satisfied the burden of proving that defendants did not intend to carry out their threat.  However, because § 1692e(5) is phrased in the disjunctive – i.e., "action that cannot legally be taken or that is not intended to be taken" – it is of no moment that plaintiff has failed to prove defendants' lack of intent, given that she has shown that the action could not legally have been taken.

---

[3] Although plaintiff attempted to secure responses through interrogatories that defendants had no intention of bringing a lawsuit against her small debt, defendants' answers are wholly inconclusive.  In response to Interrogatory 7, which asked how many times defendants have sued a consumer for a debt worth less than 110 dollars, defendants only answered that Gold Bond typically does not accept such accounts.  (Defs.' Resp. to Interrogs., at 3).  Similarly, in responding to Interrogatory 8, which asked how many times the defendants have sued a consumer within the State of New York where the debt was 110 dollars or less, defendants only responded that the general number of accounts referred to them determined the number of suits brought.  (Defs.' Resp. to Interrogs., at 3).

**(3)**

**Standing**

In their opposition brief, defendants raise an additional argument why plaintiff should be denied summary judgment, alleging that plaintiff lacks standing to bring this case because she filed for bankruptcy shortly before initiating this lawsuit. Defendants fail to substantiate their allegations regarding the bankruptcy filing with any evidence, instead relying entirely upon attorney argument. This, of course, is insufficient under Fed. R. Civ. P. 56.

Even if defendants had substantiated their argument, it would fail. On May 25, 2004, defendants allege that plaintiff filed a voluntary petition under Chapter 7 of Title 11 of the United States Bankruptcy Code, listing the debt referred to in the collection letter on her schedule of creditors as a debt to be liquidated. Plaintiff filed this action on June 8, 2004. Defendants allege that three months later, on September 9, 2004, plaintiff received a discharge and the bankruptcy was closed.

Under § 541(a) of the Bankruptcy Code, "all legal or equitable interests of the debtor in property as of the commencement of the case" become the property of the bankruptcy estate. 11 U.S.C. § 541(a); Fedotov v. Peter T. Roach & Assocs., P.C., 354 F. Supp. 2d 471, 475 (S.D.N.Y. 2005). However, "any property scheduled under section 521(1) of this title not

otherwise administered at the time of the closing of a case is abandoned to the debtor." 11 U.S.C. § 554(c). Because none of the bankruptcy papers have been filed here, it is unclear whether plaintiff listed her claim against defendants in her bankruptcy petition. If she did, by operation of law, this cause of action reverted to plaintiff's possession upon closing of the bankruptcy case. Fedotov, 354 F. Supp. 2d at 75. If she did not list the claim, she would lack standing to pursue it after emerging from bankruptcy. Correll v. Equifax Check Servs., Inc., 234 B.R. 8, 10 (D. Conn. 1997). In a case decided on remarkably similar facts, in which the debtor did list the cause of action – the only difference being that the debtor there filed suit the same day he filed for bankruptcy – summary judgment for lack of standing was denied on the basis that the claim had reverted back to the debtor. Fedotov, 354 F. Supp. 2d at 475-76.

Defendants rightly point out that standing must exist at the time suit is filed. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 569 n.4 (1992). However, as stated above, defendants have entirely failed to support their assertion that plaintiff lacks standing. Furthermore, now that the bankruptcy has closed, the cause of action is back in plaintiff's possession and any deficiency in standing could be remedied through dismissal of this case without prejudice and plaintiff's refiling of the

case.[4]  However, as such procedural maneuvering would result in the parties ending up in the same position in which they find themselves today, nothing would be gained from it.  Accordingly, plaintiff's motion for summary judgment will not be denied for lack of standing.

**Conclusion**

Because plaintiff has demonstrated that defendants threatened to take legal action on a time-barred debt, plaintiff's motion for summary judgment on liability is granted.

Dated:    Brooklyn, New York
          July 9, 2007

                                        SO ORDERED:

                                        ____/s/_____
                                        David G. Trager
                                        United States District Judge

---

[4] Indeed, plaintiff did file an amended complaint on April 18, 2005, after the bankruptcy allegedly closed on September 9, 2004.  It does not appear that plaintiff had leave of court or written consent of the defendants to filed the amended complaint, as required under Fed. R. Civ. P. 15.  In any event, because defendants were on notice of plaintiff's claim and the standing deficiency – if it exists – appears to have been nothing more than a technical oversight, the statute of limitations on plaintiff's FDCPA claim would in all likelihood be equitably tolled were she required to re-file her complaint. See, Randall's Island Family Golf Centers, Inc. v. Acushnet Co., 288 B.R. 701, 705 (Bankr. S.D.N.Y. 2003); Custom Companies v. Official Committee of Unsecured Creditors, No. 00-CV-1161, 2000 WL 765090, at *1-2 (N.D. Ill. 2000).